FILED

2014 MAY 28  PM 3: 14

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY___

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2013 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 14-**CR 14 00311** |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 371: Conspiracy; 26 U.S.C. § 7201: Tax Evasion; |
| JOHN VISCONTI, | 26 U.S.C. § 7206(1): Subscription to False Tax Return] |
| Defendant. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.   Defendant JOHN VISCONTI ("defendant VISCONTI") was a resident of Beverly Hills, in Los Angeles County, California.

2.   Axium International, Inc. ("Axium") was a Delaware corporation that maintained offices in Burbank and Los Angeles, California, and elsewhere.  Axium was owned by Axium Holdings, Inc. ("Axium Holdings"), a Delaware corporation.

3.    Defendant VISCONTI was the Chairman and Chief Executive Officer of Axium and its wholly owned subsidiaries and the beneficial owner of approximately 83.25% of Axium through his 100% ownership of Unity America Fund ("UAF").  UAF owned 90% of JVE Enterprises, Inc. ("JVE"), which in turn owned 92.5% of Axium Holdings.

4.    Co-conspirator No. 1 was the Chief Operating Officer of Axium, reported directly to defendant VISCONTI, and owned the remaining 10% of JVE.

5.    Together with its wholly owned subsidiaries, Axium provided payroll services and related technological and financial services to multiple major entertainment industry entities, financial service companies, and other large companies.  As the payroll services provider and employer of record for its clients, Axium and its subsidiaries regularly prepared federal payroll tax returns (Internal Revenue Service ("IRS") Forms 941), as well as state payroll tax returns.

6.    The IRS was a constituent agency of the United States Department of the Treasury and was responsible for administering and enforcing the tax laws of the United States and collecting the taxes owed to the United States by its citizens and others.

7.    Defendant VISCONTI maintained, among other bank accounts, City National Bank Account number x4182, held in the name of Unity Fund Investment Company c/o J. Visconti (the "Unity c/o Visconti Account").

B.    OBJECT OF THE CONSPIRACY

8.    Beginning at least as early as in or about 2005 and continuing through at least in or about October 2008, in Los Angeles

1  County, within the Central District of California, and elsewhere,

2  defendant VISCONTI and Co-conspirator No. 1, together with others

3  known and unknown to the Grand Jury, knowingly combined, conspired,

4  and agreed to defraud the United States by deceitful and dishonest

5  means for the purpose of impeding, impairing, obstructing, and

6  defeating the lawful government functions of the IRS in the

7  ascertainment, computation, assessment, and collection of revenue,

8  namely, the individual income taxes owed by defendant VISCONTI and

9  Co-conspirator 1.

10  C.   THE MANNER AND MEANS OF THE CONSPIRACY

11       9.   The object of the conspiracy was carried out, and to be

12  carried out, in substance, as follows:

13       10.  Defendant VISCONTI and Co-conspirator 1 would use several

14  mechanisms to divert monies from Axium and its subsidiaries to

15  themselves, with the result that defendant VISCONTI and Co-

16  conspirator No. 1 would each receive substantial income in excess of

17  his reported salary as reflected on the books and records of Axium

18  and as stated on their respective federal income tax returns.  The

19  mechanisms to be used by defendant VISCONTI and Co-conspirator No. 1

20  included the following:

21            a.   Diverting Tax Refunds Payable to Axium and Axium
                   Subsidiaries to Secret Bank Accounts Controlled by
22                 Defendant VISCONTI and Co-Conspirator No. 1

23            i.   Defendant VISCONTI and Co-conspirator No. 1,

24  aiding and abetting each other, would establish, maintain, and

25  control bank accounts (the "Secret Accounts"), each of which would be

26  held in the name of Axium or an Axium subsidiary.  Defendant VISCONTI

27  and Co-conspirator No. 1 would conceal the existence of the Secret

28

1   Accounts from the IRS, from persons responsible for maintaining the

2   books and records of Axium and its subsidiaries, and from others.

3          ii.   Defendant VISCONTI and Co-conspirator No. 1,

4   aiding and abetting each other, would take personal possession of

5   federal and state tax refund checks (the "Diverted Refund Checks")

6   made payable to Axium or an Axium subsidiary and would cause the

7   Diverted Refund Checks to be deposited into the Secret Accounts.

8          iii. Defendant VISCONTI and Co-conspirator No. 1,

9   aiding and abetting each other, would cause proceeds from the

10  Diverted Refund Checks (the "Diverted Refund Monies") to be

11  transferred in such a manner that approximately one half of the

12  Diverted Refund Monies (a "Co-conspirator Cut") would be sent to bank

13  accounts owned, controlled, or held for the benefit of defendant

14  VISCONTI and approximately one half of the Diverted Refund Monies

15  would be sent to bank accounts owned or controlled by Co-conspirator

16  No. 1.   Thereafter, defendant VISCONTI and Co-conspirator No. 1 would

17  each use his Co-Conspirator Cut for his personal benefit and at his

18  own discretion.

19         iv.   Defendant VISCONTI and Co-conspirator No. 1 would

20  conceal from the IRS, from persons responsible for maintaining the

21  books and records of Axium and its subsidiaries, and from others that

22  defendant VISCONTI and Co-conspirator No. 1 were obtaining income

23  from Axium and its subsidiaries, through the diverted refund monies,

24  that was not reflected in their reported salaries and dividends.

25  //

26  //

27  //

28  //

1            b.    Causing Axium to Make Payments to an Entity Controlled by Defendant VISCONTI and Co-conspirator No. 1

2

3            i.    Defendant VISCONTI and Co-conspirator No. 1,

4 aiding and abetting each other, would cause the formation of

5 California Construction Consulting, LLC ("California Construction"),

6 a Nevada limited liability company of which defendant VISCONTI and

7 Co-conspirator No. 1, through additional limited liability companies,

8 maintained ownership and control.

9            ii.    Defendant VISCONTI and Co-conspirator No. 1 would

10 cause Axium to make payments totaling at least $570,000 to California

11 Construction (the "California Construction Payments") for purported

12 services rendered by California Construction to Axium.

13            iii. Defendant VISCONTI and Co-conspirator No. 1,

14 aiding and abetting each other, would cause the California

15 Construction Payments to be deposited into a bank account held in the

16 name of California Construction at Union Bank (the "California

17 Construction Account"), after which defendant VISCONTI and Co-

18 conspirator No. 1 would divide the proceeds of the California

19 Construction Payments between themselves by causing approximately

20 $275,000 of the California Construction Payments to be transferred to

21 an account held for the benefit of defendant VISCONTI and causing

22 approximately $275,000 of the California Construction Payments to be

23 transferred to an account held by Co-conspirator No. 1. Thereafter,

24 defendant VISCONTI and Co-conspirator No. 1 would each use his share

25 of the California Construction Payments for his own benefit and at

26 his own discretion.

27            iv.    Defendant VISCONTI and Co-conspirator No. 1 would

28 conceal from the IRS, from persons responsible for maintaining the

1   books and records of Axium and its subsidiaries, and from others that
2   defendant VISCONTI and Co-conspirator No. 1 were obtaining income
3   from Axium and its subsidiaries, through the California Construction
4   Payments, that was not reflected in their reported salaries and
5   dividends.

6          c.    Diverting Cash From Axium

7                i.   Defendant VISCONTI and Co-conspirator No. 1 would
8   cause cash withdrawals ("the Cash Monies"), in amounts averaging
9   approximately $8,000, and occurring at approximately weekly
10  intervals, to be made from one or more bank accounts held by Axium.
11  Defendant VISCONTI and Co-conspirator No. 1 would then divide the
12  Cash Monies into approximately equal amounts (a "Cash Cut"), and each
13  would exercise control over his Cash Cut and use his Cash Cut, at his
14  discretion to cover his own personal expenses and obligations.

15               ii.   Defendant VISCONTI and Co-conspirator No. 1 would
16  conceal from the IRS, from persons responsible for maintaining the
17  books and records of Axium, and from others that each of them was
18  obtaining cash monies from Axium that were not reflected in their
19  reported salaries and dividends.

20         d.    Causing Approximately Half the Purported Salary Paid
               to S.C., a Purported Employee of an Axium Subsidiary,
21             to Be Transferred to an Account Held for the Benefit
               of Defendant VISCONTI

22

23               i.   Defendant VISCONTI and Co-conspirator No. 1 would
24  cause an Axium subsidiary to pay S.C., a purported employee,
25  approximately $164,000 as a purported net salary payment (the "Salary
26  Payment").

27               ii.   Defendant VISCONTI and Co-conspirator No. 1 would
28  cause approximately one-half of the Salary Payment made to S.C. to be

                                    6

1  transferred to an account held for the benefit of defendant VISCONTI.

2              iii. Defendant VISCONTI and Co-conspirator No. 1 would

3  conceal from the IRS, from persons maintaining the books and records

4  of Axium, and from others that defendant VISCONTI had received

5  additional income from Axium, through the purported salary paid to

6  S.C., that was not reflected in defendant VISCONTI's reported salary

7  and dividends.

8      11.  Defendant VISCONTI and Co-conspirator No. 1 would each file

9  individual federal income tax returns (IRS Forms 1040) on which each

10 of them would report the sums he received from Axium through his

11 reported salary and would omit the additional sums he obtained from

12 Axium through the mechanisms described above in paragraph 10.

13 D.  OVERT ACTS

14     12.  In furtherance of the conspiracy, and to accomplish its

15 object, defendant VISCONTI and Co-conspirator No. 1, together with

16 others known and unknown to the Grand Jury, committed and willfully

17 caused others to commit the following overt acts in the Central

18 District of California and elsewhere:

19     a.  Overt Acts Involving Diverted Refund Monies

20 Overt Act No. 1:   On or about June 23, 2005, Co-conspirator

21 No. 1 caused a tax refund check from the State of New York, dated

22 June 17, 2005, and made payable to Axium Hollywood Services, Inc. in

23 the amount of approximately $96,026, to be deposited into a Secret

24 Account in the name of Axium International, Inc., held at the Bank of

25 America and bearing account number 09064 (the "Secret Umbrella

26 Account").

27 Overt Act No. 2:   On or about June 29, 2005, Co-conspirator

28 No. 1 caused the Secret Umbrella Account to transfer $45,000 to Bank

1   of America account number x01477 held by defendant VISCONTI (the

2   "Visconti Account").

3       Overt Act No. 3:   On or about June 29, 2005, Co-conspirator

4   No. 1 caused the Secret Umbrella Account to transfer $45,000 to Bank

5   of America account number x31167 held by Co-conspirator No. 1 (the

6   "Co-conspirator No. 1 Account").

7       Overt Act No. 4:   On or about August 5, 2005, Co-conspirator

8   No. 1 caused a United States Treasury Check, dated August 2, 2005,

9   and made payable to Axium Film Corp. in the amount of approximately

10  $49,506, to be deposited into the Secret Umbrella Account.

11      Overt Act No. 5:   On or about August 9, 2005, Co-conspirator

12  No. 1 caused the Secret Umbrella Account to transfer approximately

13  $25,000 to the Visconti Account.

14      Overt Act No. 6:   On or about August 9, 2005, Co-conspirator

15  No. 1 caused the Secret Umbrella Account to transfer $25,000 to the

16  Co-conspirator No. 1 Account.

17      Overt Act No. 7:   On or about August 11, 2005, Co-conspirator

18  No. 1 caused a United States Treasury Check, dated August 2, 2005, and

19  made payable to Avalon Film Service Corp. in the amount of

20  approximately $4,420, to be deposited into the Secret Umbrella

21  Account.

22      Overt Act No. 8:   On or about September 19, 2005, Co-

23  conspirator No. 1 caused a United States Treasury Check, dated

24  September 13, 2005, and made payable to Avalon Film Service Corp. in

25  the amount of approximately $272,505 to be deposited into a Secret

26  Account in the name of Avalon Film Service Corp., held at the Bank of

27  America and bearing account number x41689 ("AFSC Secret Account

28  No. 1").

8

1    Overt Act No. 9:   On or about September 22, 2005, Co-

2  conspirator No. 1 caused $140,000 to be transferred from AFSC Secret

3  Account No. 1 to the Visconti Account.

4    Overt Act No. 10:   On or about September 22, 2005, Co-

5  conspirator No. 1 caused $130,000 to be transferred from AFSC Secret

6  Account No. 1 to the Co-conspirator No. 1 Account.

7    Overt Act No. 11:   On or about February 8, 2006, Co-conspirator

8  No. 1 caused a United States Treasury check, dated January 31, 2006

9  and made payable to Global Enterprise, Inc., in the amount of

10  approximately $469,100, to be deposited into a Secret Account held in

11  the name of Global Enterprise, Inc. (the "GEI Secret Account").

12    Overt Act No. 12:   On or about February 10, 2006, Co-

13  conspirator No. 1 transferred $219,000 from the GEI Secret Account to

14  the Visconti Account.

15    Overt Act No. 13:   On or about February 10, 2006, Co-

16  conspirator No. 1 transferred $200,000 from the GEI Secret Account to

17  Bank of America Account number x11632, held by Co-Conspirator No. 1

18  in the name of Ground Zero Capital Group LLC (the "Ground Zero

19  Account").

20    Overt Act No. 14:   On or about February 10, 2006, Co-

21  conspirator No. 1 transferred $50,000 from the GEI Secret Account to

22  the Secret Umbrella Account.

23    Overt Act No. 15:   On or about April 4, 2006, defendant

24  VISCONTI opened Bank of America account number x68558 in the name of

25  Unity America Fund, Inc. (the "UAF Account").

26    Overt Act No. 16:   On or about April 4, 2006, defendant

27  VISCONTI instructed Co-conspirator 1 to send, henceforth, defendant

28

1   VISCONTI's Co-conspirator Cut of diverted Axium monies to the UAF

2   Account rather than the Visconti Account.

3     Overt Act No. 17:   On or about April 13, 2006, Co-conspirator

4   No. 1 caused a United States Treasury check, dated April 11, 2006 and

5   made payable to Axium Hollywood Services, Inc. in the amount of

6   approximately $294,861, to be deposited into a Secret Account held in

7   the name of Axium Hollywood Services, Inc. (the "AHSI Secret

8   Account").

9     Overt Act No. 18:   On or about April 18, 2006, Co-conspirator

10   No. 1 caused the AHSI Secret Account to transfer approximately

11   $290,000 to the Secret Umbrella Account.

12     Overt Act No. 19:   On or about April 19, 2006, Co-conspirator

13   No. 1 sent an email to a representative of Bank of America and

14   defendant VISCONTI, requesting that Bank of America make two

15   transfers from the AHSI Secret Account, namely: (i) a transfer of

16   $170,000 "to the new Unity America Fund account you opened per John,"

17   and (ii) $150,000 to the Ground Zero Account.

18     Overt Act No. 20:   On or about April 26, 2006, Co-conspirator

19   No. 1 caused two United States Treasury checks, one of which was in

20   the amount of $360,902 and the other of which was in the amount of

21   $27.60 and both of which were dated April 18, 2006 and made payable

22   to Avalon Hollywood Services, Inc., to be deposited into a Secret

23   Account in the name of Avalon Hollywood Services, Inc. (the "Avalon

24   Hollywood Secret Account").

25     Overt Act No. 21:   On or about April 26, 2006, Co-conspirator

26   No. 1 caused the Avalon Hollywood Secret Account to transfer

27   approximately $350,000 to the Secret Umbrella Account.

28

1    Overt Act No. 22:   On or about May 5, 2006, Co-conspirator No.

2    1 caused the Secret Umbrella Account to transfer $195,000 to the UAF

3    Account.

4    Overt Act No. 23:   On or about May 5, 2006, Co-conspirator

5    No. 1 caused the Secret Umbrella Account to transfer $155,000 to the

6    Ground Zero Account.

7    Overt Act No. 24:   On or about June 13, 2006, defendant

8    VISCONTI directed Co-conspirator No. 1 to write a check drawn from

9    Secret Umbrella Account to UAF in the amount of $5,000.

10   Overt Act No. 25:   On or about June 13, 2006, Co-conspirator

11   No. 1 wrote a check drawn from the Secret Umbrella Account, payable

12   to UAF, in the amount of $5,000 (the "$5,000 UAF check").

13   Overt Act No. 26:   On or about June 16, 2006, defendant

14   VISCONTI deposited the $5,000 UAF check into the Unity c/o Visconti

15   Account.

16   Overt Act No. 27:   On or about June 27, 2006, Co-conspirator

17   No. 1 caused a State of California tax refund check, dated June 22,

18   2006 and made payable to Global Enterprise, Inc. in the amount of

19   approximately $202,385, to be deposited into the GEI Secret Account.

20   Overt Act No. 28:   On or about June 28, 2006, Co-conspirator

21   No. 1 caused the GEI Secret Account to transfer approximately

22   $202,000 to the Secret Umbrella Account.

23   Overt Act No. 29:   On or about June 30, 2006, Co-conspirator

24   No. 1 caused the Secret Umbrella Account to transfer $105,000 to the

25   UAF Account.

26   Overt Act No. 30:   On or about June 30, 2006, Co-conspirator

27   No. 1 caused the Secret Umbrella Account to transfer $97,000 to the

28   Ground Zero Account.

1   Overt Act No. 31:   On or about August 9, 2006, defendant
2   VISCONTI caused the formation of Stekeno Productions, LLC
3   ("Stekeno"), a California limited liability company.

4   Overt Act No. 32:   On or about August 9, 2006, defendant
5   VISCONTI instructed Co-conspirator No. 1 to open a bank account, in
6   the name of Stekeno, at Bank of America, for the purpose of holding
7   funds to be disbursed at the direction of defendant VISCONTI.
8   Defendant VISCONTI further instructed Co-conspirator No. 1 that only
9   Co-conspirator No. 1 should be a signatory to the account, that
10  defendant VISCONTI's name should not appear on the account, and that
11  henceforth, defendant VISCONTI's Co-Conspirator Cut of funds diverted
12  from Axium should be transferred to the account, rather than the UAF
13  Account or the Visconti Account.

14  Overt Act No. 33:   On or about August 31, 2006, Co-conspirator
15  1 opened Bank of America account number x66102 in the name of Stekeno
16  (the "Stekeno account").

17  Overt Act No. 34:   On or about September 11, 2006, Co-
18  conspirator No. 1 caused a United States Treasury check, dated
19  September 5, 2006 and made payable to Avalon Hollywood Services, Inc.
20  in the amount of approximately $206,518 to be deposited into the
21  Avalon Hollywood Secret Account.

22  Overt Act No. 35:   On or about September 11, 2006, Co-
23  conspirator No. 1 caused a United States Treasury check, dated
24  September 5, 2006 and made payable to Avalon Film Services Corp. in
25  the amount of approximately $262,265, to be deposited into a Secret
26  Account in the name of Avalon Film Service Corp. held at the Bank of
27  America and bearing account number x44185 ("AFSC Secret
28  Account No. 2").

12

Overt Act No. 36:   On or about September 13, 2006, Co-conspirator No. 1 caused the Avalon Hollywood Secret Account to transfer approximately $205,000 to the Secret Umbrella Account.

Overt Act No. 37:   On or about September 13, 2006, Co-conspirator No. 1 caused the AFSC No. 2 Secret Account to transfer $260,000 to the Secret Umbrella Account.

Overt Act No. 38:   On or about September 19, 2006, Co-conspirator No. 1 caused the Secret Umbrella Account to transfer approximately $215,000 to the Ground Zero Account.

Overt Act No. 39:   On or about September 25, 2006, Co-conspirator No. 1 caused the Secret Umbrella Account to transfer $235,000 to the Stekeno Account.

Overt Act No. 40:   On or about October 3, 2006, defendant VISCONTI directed Co-conspirator No. 1 to write a check on the Stekeno Account, in the amount of $150,000 (the "$150,000 check"), made payable to a minor child of defendant VISCONTI (the "Visconti child").

Overt Act No. 41:   On or about October 3, 2006, Co-conspirator No. 1 provided the $150,000 check to defendant VISCONTI.

Overt Act No. 42:   On or about October 3, 2006, defendant VISCONTI sent the $150,000 check to the mother of the Visconti child.

Overt Act No. 43:   On or about November 9, 2006, defendant VISCONTI directed Co-conspirator No. 1 to write a check on the Stekeno Account, in the amount of $10,000 (the "November 2006 $10,000 check"), made payable to the Visconti child.

Overt Act No. 44:   On or about November 9, 2006, Co-conspirator No. 1 provided the November 2006 $10,000 check to defendant VISCONTI.

1    Overt Act No. 45:   On or about November 9, 2006, defendant
2   VISCONTI sent the November 2006 $10,000 check to the mother of the
3   Visconti child.

4    Overt Act No. 46:   On or about November 28, 2006, defendant
5   VISCONTI instructed Co-conspirator No. 1 to write a check, in the
6   amount of $38,000 and drawn from the Stekeno Account, payable to the
7   Visconti child.

8    Overt Act No. 47:   On or about November 28, 2006, Co-
9   conspirator No. 1 wrote a check drawn from the Stekeno account in the
10  amount of $38,000, made payable to the Visconti child (the "$38,000
11  check").

12   Overt Act No. 48:   On or about November 28, 2006, Co-
13  conspirator No. 1 provided the $38,000 check to defendant VISCONTI.

14   Overt Act No. 49:   On or about November 29, 2006, defendant
15  VISCONTI instructed Co-conspirator No. 1 to write a check, in the
16  amount of $2,300, made payable to the mother of the Visconti child.

17   Overt Act No. 50:   On or about November 29, 2006, Co-
18  conspirator No. 1 wrote a check drawn from the Secret Umbrella
19  Account in the amount of $2,300, made payable to the mother of the
20  Visconti child (the "$2,300 Check").

21   Overt Act No. 51:   On or about November 29, 2006, Co-
22  conspirator No. 1 provided the $2,300 Check to defendant VISCONTI.

23   Overt Act No. 52:   On or about November 29, 2006, defendant
24  VISCONTI sent the $2,300 check and the $38,000 check to the mother of
25  the Visconti child.

26   Overt Act No. 53:   On or about January 12, 2007, Co-conspirator
27  No. 1 caused a United States Treasury check, dated January 9, 2007

28

1  and made payable to Global Enterprises, Inc. in the amount of

2  approximately $537,027 to be deposited into the GEI Secret Account.

3      Overt Act No. 54:   On or about January 16, 2007, Co-conspirator

4  No. 1 caused the GEI Secret Account to transfer $260,000 to the

5  Stekeno Account.

6      Overt Act No. 55:   On or about January 16, 2007, Co-conspirator

7  No. 1 caused the GEI Secret Account to transfer $250,000 to the

8  Ground Zero Account.

9          b.   Overt Acts Pertaining to California Construction

10     Overt Act No. 56:   On or about May 24, 2007, Co-conspirator

11  No. 1 and defendant VISCONTI caused Axium to issue a check in the

12  amount of $300,000 (the "$300,000 check"), payable to California

13  Construction.

14     Overt Act No. 57:   On or about May 24, 2007, Co-conspirator

15  No. 1 deposited the $300,000 check into the California Construction

16  Account.

17     Overt Act No. 58:   On or about May 25, 2007, defendant VISCONTI

18  directed an individual who worked in the offices of Axium to prepare

19  an invoice representing that California Construction had performed

20  services for Axium for which California Construction was owed

21  $300,000.

22     Overt Act No. 59:   On or about June 4, 2007, Co-conspirator

23  No. 1 wrote a check drawn from the California Construction Account

24  made payable to Stekeno in the amount of $140,000.

25     Overt Act No. 60:   On or about June 4, 2007, Co-conspirator

26  No. 1 wrote a check drawn from the California Construction Account

27  made payable to Ground Zero in the amount of $140,000.

28

1    Overt Act No. 61:   On or about July 24, 2007, defendant
2    VISCONTI and Co-conspirator No. 1 caused Axium to issue a check in
3    the amount of $270,000, made payable to California Construction (the
4    "$270,000 check").

5    Overt Act No. 62:   On or about July 24, 2007, Co-conspirator
6    No. 1 deposited the $270,000 check into the California Construction
7    Account.

8    Overt Act No. 63:   On or about July 24, 2007, defendant
9    VISCONTI gave Co-conspirator No. 1 a hand-written note (the "July 24,
10   2007 hand-written note"), which stated in part, "2 checks on
11   Stecchino PLZ."

12   Overt Act No. 64:   On or about July 24, 2007, defendant
13   VISCONTI orally instructed Co-conspirator 1 to sign two checks, with
14   the payee's name and the amount of the check left blank (the "blank
15   checks"), drawn from the Stekeno Account, and to provide the blank
16   checks to defendant VISCONTI.

17   Overt Act No. 65:   On or about July 24, 2007, Co-conspirator
18   No. 1 gave defendant VISCONTI two blank checks drawn from the Stekeno
19   Account and signed by Co-conspirator No. 1.

20   Overt Act No. 66:   On or about July 24, 2007, defendant
21   VISCONTI completed the blank checks by writing the name of the
22   Visconti child as payee on one of the checks and writing the name of
23   E.S. on the other check and by writing the amount payable, namely,
24   $10,000 on each check.

25   Overt Act No. 67:   On or about July 25, 2007, Co-conspirator
26   No. 1 wrote a check drawn from the California Construction Account
27   and made payable to Stekeno in the amount of $135,000.

28

1     Overt Act No. 68:   On or about July 25, 2007, Co-conspirator

2  No. 1 wrote a check, drawn from the California Construction Account

3  and made payable to Ground Zero in the amount of $135,000.

4          c.   Overt Acts Pertaining Cash Withdrawals From Axium

5     Overt Act No. 69:   On or about January 27, 2006, Co-conspirator

6  No. 1 provided Axium employee E.Q. with a check made payable to

7  "cash" in the amount of $8,000 (the "$8,000 check").

8     Overt Act No. 70:   On or about January 27, 2006, Co-conspirator

9  No. 1 instructed E.Q. to take the $8,000 check to Union Bank of

10  California, endorse it, and bring the proceeds back to Co-conspirator

11  No. 1.

12     Overt Act No. 71:   On or about January 27, 2006, defendant

13  VISCONTI told an employee of Union Bank of California that E.Q. was

14  authorized to cash the $8,000 check.

15     Overt Act No. 72:   On or about January 27, 2006, Co-conspirator

16  No. 1 provided defendant VISCONTI with approximately half the

17  proceeds from the $8,000 check.

18     Overt Act No. 73:   On or about October 15, 2006, defendant

19  VISCONTI sent an email to Co-conspirator No. 1 with the subject line,

20  "Confidential/October 15," stating in part, "Find a way to cash

21  checks."

22     Overt Act No. 74:   On or about November 21, 2006, Co-

23  conspirator No. 1 placed an order with Bank of America for cash to be

24  delivered to the Axium office in Los Angeles.

25     Overt Act No. 75:   On or about July 6, 2007, Co-conspirator

26  No. 1 wrote a check drawn from an account of Axium, made payable to

27  Axium employee V.B., in the amount of $6,800 (the "$6,800 check").

28

1       <u>Overt Act No. 76:</u>   On or about July 6, 2007, Co-conspirator

2   No. 1 instructed Axium employee V.B. to take the $6,800 check to

3   Bank of America, endorse it, and bring the proceeds back to Co-

4   conspirator No. 1.

5           d.   <u>Overt Act Pertaining to Account of S.C.</u>

6       <u>Overt Act No. 77:</u>   On or about January 5, 2007, defendant

7   VISCONTI instructed Co-conspirator No. 1 to transfer approximately

8   $82,350, held in the account of S.C., to the Stekeno Account.

9           e.   <u>Overt Acts Pertaining to Federal Income Tax Returns</u>

10      <u>Overt Act No. 78:</u>   On or about April 15, 2006, defendant

11  VISCONTI filed his individual federal income tax return, IRS Form

12  1040, for the year 2005, reporting that his total income for that

13  year was $335,531.

14      <u>Overt Act No. 79:</u>   On or about August 14, 2006, Co-conspirator

15  No. 1 filed his individual federal income tax return, IRS Form 1040,

16  for the year 2005, reporting that his total income for that year was

17  $378,547.

18      <u>Overt Act No. 80:</u>   On or about October 15, 2007, defendant

19  VISCONTI filed his individual federal income tax return, IRS Form

20  1040, for the year 2006, reporting that his total income for that

21  year was $319,546.

22      <u>Overt Act No. 81:</u>   On or about September 12, 2007, Co-

23  conspirator No. 1 filed his individual federal income tax return, IRS

24  Form 1040, for the year 2006, reporting that his total income for

25  that year was $653,291.

26      <u>Overt Act No. 82:</u>   On or about June 9, 2008, defendant VISCONTI

27  signed his individual federal income tax return, IRS Form 1040, for

28

1  the year 2007, reporting that his total income for that year was

2  $437,589.

3      Overt Act No. 83:    On or about June 25, 2008, defendant

4  VISCONTI sent his individual federal income tax return, IRS Form

5  1040, for the year 2007, to an office of the IRS.

6      Overt Act No. 84:    On or about October 19, 2008, Co-conspirator

7  No. 1 filed his individual federal income tax return, IRS Form 1040,

8  for the year 2007, reporting that his total income for that year was

9  $601,955.

COUNT TWO

[26 U.S.C. § 7201]

13.   The Grand Jury repeats and re-alleges paragraphs one through seven of this Indictment as though set forth in full herein.

A.   ADDITIONAL INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:,

14.   Defendant VISCONTI owned and controlled Stekeno Productions, LLC ("Stekeno"), a California limited liability company.

15.   On or about August 31, 2006, defendant VISCONTI instructed Co-conspirator No. 1 to open a bank account in the name of Stekeno for the purpose of holding funds to be disbursed at the direction of defendant VISCONTI; to serve as the signatory on the account; and to ensure that defendant VISCONTI's name did not appear on the account.

16.   On or about August 31, 2006, Co-conspirator No. 1 opened Bank of America account number x66102 in the name of Stekeno (the "Stekeno Account").

17.   The Stekeno Account was funded by defendant VISCONTI's share of monies diverted from Axium and its subsidiaries, by defendant VISCONTI and Co-conspirator No. 1, which were not included in the amounts recorded by Axium as the salary and benefits paid to defendant VISCONTI.

18.   In or about February 2007, defendant VISCONTI and Co-conspirator No. 1 caused the formation of California Construction Consulting, LLC ("California Construction"), a Nevada limited liability company over which defendant VISCONTI and Co-conspirator No. 1, through additional limited liability companies, held ownership and control.

19.   From in or about March 2007 through and including in or

about July 2007, Co-conspirator No. 1 served as the signatory on a bank account held in the name of California Construction at Union Bank (the "California Construction Account").

B.   EVASION OF INCOME TAX

20.   Between on or about January 5, 2007, through and including on or about June 25, 2008, defendant VISCONTI did willfully attempt to evade and defeat a substantial part of the federal income tax due and owing by him to the United States of America for the calendar year 2007, in the approximate amount of at least $242,000, by committing the following acts, among others:

a.   On or about January 5, 2007, defendant VISCONTI instructed Co-conspirator No. 1 to transfer approximately $82,350, representing one half of the net salary paid by an Axium subsidiary to purported Axium employee S.C., to the Stekeno Account.

b.   On or about May 8, 2007, defendant VISCONTI instructed Co-conspirator No. 1 to issue a check drawn from the Stekeno Account, payable to a former spouse of defendant VISCONTI, in the amount of $32,000.

c.   On or about May 24, 2007, defendant VISCONTI and Co-conspirator No. 1, aiding and abetting each other, caused Axium to issue a check made payable to California Construction in the amount of $300,000 and caused the check to be delivered to Co-conspirator No. 1 for deposit into the California Construction Account.

d.   On or about May 25, 2007, defendant VISCONTI, together with others known and unknown to the Grand Jury, caused the preparation of an invoice stating that California Construction had performed services for Axium, for which California Construction was owed $300,000.

e.   On or about June 4, 2007, defendant VISCONTI caused Co-conspirator No. 1 to write a check drawn from the California Construction Account made payable to Stekeno for $140,000 and to deposit the check into the Stekeno Account.

f.   On or about July 24, 2007, defendant VISCONTI and Co-conspirator No. 1, aiding and abetting each other, caused Axium to issue a check made payable to California Construction for $270,000.

g.   On or about July 25, 2007, defendant VISCONTI caused Co-conspirator No. 1 to issue a check drawn from the California Construction Account, made payable to Stekeno, in the amount of $135,000 (the "$135,000 check") and to deposit the $135,000 check into the Stekeno Account.

h.   On or about August 30, 2007, defendant VISCONTI caused the transfer of $350,000 from the Stekeno Account to a confidential client trust account held at an accounting firm ("the Accounting Firm") in Los Angeles, California (the "Trust Account") for the benefit of defendant VISCONTI.

i.   On or about September 4, 2007, defendant VISCONTI caused the transfer of approximately $273,820 from the Stekeno Account to the Trust Account.

j.   On or about October 2, 2007, defendant VISCONTI caused the Trust Account to transfer approximately $201,954 to an escrow account held by First American Title Company.

k.   On or about October 22, 2007, defendant VISCONTI instructed individuals at the Accounting Firm to release $200,000 from the Trust Account, in the form of a check made payable to UAF.

//

//

1    l. On or about November 2, 2007, defendant VISCTONI

2 instructed individuals at the Accounting Firm to release $100,000

3 from the Trust Account, in the form a check made payable to UAF.

4    m. On or about May 5, 2008, defendant VISCONTI instructed

5 individuals at the Accounting Firm to release approximately $21,846

6 from the Trust Account, in the form of a check payable to a law firm

7 to which defendant VISCONTI owed payment.

8    n. On or about June 9, 2008, defendant VISCONTI signed a

9 United States federal income tax return, IRS Form 1040, representing

10 that defendant VISCONTI's total income for the calendar year 2007 was

11 $437,589 (the "2007 Tax Return").

12    o. On or about June 25, 2008, defendant VISCONTI caused

13 the 2007 Tax Return to be filed with the Internal Revenue Service.

14    p. Defendant VISCONTI willfully understated his total

15 income on the 2007 Tax Return by at least $691,000, resulting in an

16 understatement of the tax due and owing of at least $242,000.

COUNT THREE

[26 U.S.C. § 7206(1)]

21.   On or about June 25, 2008, in Los Angeles County, within the Central District of California, and elsewhere, defendant JOHN VISCONTI ("defendant VISCONTI"), a resident of Beverly Hills, California, did willfully make and subscribe a United States Individual Income Tax Return, Form 1040, for the calendar year 2007, which was verified by a written declaration that it was made under the penalties of perjury and which was filed with the Internal Revenue Service, which defendant VISCONTI did not believe to be true and correct as to every material matter, in that on such Form 1040,

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

1   defendant VISCONTI reported, on line 22, that his total income for

2   the year 2007 was $437,589, when, in truth and in fact, as defendant

3   VISCONTI then well knew and believed, his total income for the year

4   2007 was substantially higher that the amount he reported.

A TRUE BILL

_____/S/_____
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, MAJOR FRAUDS Section

RANEE A. KATZENSTEIN
Assistant United States Attorney
Deputy Chief, Major Frauds Section

ANGELA J. DAVIS
Assistant United States Attorney
Major Frauds Section